THIRD DIVISION
February 13, 2018
2018 IL App (1st) 180246
No. 1-18-0246

| JOE COOK, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 COEL 7 |
| | ) | |
| DAVID ORR, in His Official Capacity as Cook County | ) | |
| Clerk; and THE CHICAGO BOARD OF ELECTION | ) | |
| COMMISSIONERS, Marisel A. Hernandez, Chairwoman, | ) | |
| William J. Kresse, Commissioner/Secretary, | ) | |
| Jonathan T. Swain, Commissioner, | ) | Honorable |
| | ) | Robert W. Bertucci, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Presiding Justice Cobbs and Justice Fitzgerald Smith concurred in the judgment and opinion.

OPINION

¶ 1    The plaintiff in this case sought to become a write-in candidate for the office of Commissioner of the Metropolitan Water Reclamation District of Greater Chicago in the Democratic primary election on March 20, 2018.  Under section 17-16.1 of the Illinois Election Code, before an election authority is permitted to count a write-in vote, the candidate must file a notarized declaration of intent to become a write-in candidate with the proper "election authority or authorities."  The Cook County Clerk and the Chicago Board of Election Commissioners are both election authorities for the Democratic primary election for the office of Commissioner of the Metropolitan Water Reclamation District of Greater Chicago.  The plaintiff filed a notarized declaration of intent to become a write-in candidate with the County Clerk but did not file a declaration with the Chicago Board of Election Commissioners.  The plaintiff was subsequently notified by the Chicago Board of Election Commissioners that they would not count his write-in

votes because the board did not receive a notarized declaration of intent from the plaintiff. The plaintiff filed a complaint for a writ of *mandamus* and for a declaratory judgment alleging he complied with section 17-16.1 of the Election Code when he filed a declaration with the County Clerk. The circuit court of Cook County denied the plaintiff's complaint.

¶ 2        The issue presented in this appeal is whether a write-in candidate may serve a declaration of intent to become a write-in candidate with one of two existing election authorities for the election in which he seeks to become a candidate and have his write-in votes in that election counted by the election authority that was not served with a declaration of intent. We find that under Illinois law the Chicago Board of Election Commissioners is an election authority for the plaintiff's election and the board had to be served with the plaintiff's declaration of intent to become a write-in candidate before the board could lawfully count his write-in votes. Serving the County Clerk was not sufficient; therefore, we affirm the judgment of the circuit court denying the plaintiff's complaint.

¶ 3                              BACKGROUND

¶ 4        Plaintiff, Joe Cook, filed an amended complaint for declaratory judgment and writ of *mandamus* against defendants, David Orr, in his official capacity as Clerk of Cook County, and the Chicago Board of Election Commissioners (hereinafter "Board"), seeking a declaration he properly filed a declaration of intent to be a write-in candidate for the office of Commissioner of the Metropolitan Water Reclamation District of Greater Chicago (MWRD) at the March 20, 2018 primary election ("primary election") and a writ of *mandamus* to the Board directing it to count all write-in votes for plaintiff in the primary election. Following a hearing the circuit court of Cook County denied plaintiff's complaint for declaratory judgment and writ of *mandamus*. For the following reasons, we affirm. The following is taken from plaintiff's amended complaint.

¶ 5    On January 12, 2018, plaintiff, who is registered to vote in Chicago, filed a document titled "Declaration of Intent To Be a Write-In Candidate" with defendant Orr, in his official capacity and Clerk of Cook County (hereinafter "Clerk"). The document, which is attached as an exhibit to plaintiff's amended complaint, lists the office for which plaintiff sought to be a write-in candidate. At the bottom of the form is a box containing the following text: "An original Declaration of Intent must be filed with *each* election authority [county clerk(s) or board(s) of election commissioners in the territory] not later than 61 days before the election." (Emphasis in original.) On January 19, 2018, the general counsel for the Board sent an email to multiple parties discussing the laws governing the filing of declarations of intent to be a write-in candidate. Plaintiff alleges the email followed a telephone conversation during which the Board's position that no write-in votes would be counted for any candidate who failed to file a notarized declaration of intent with the Board was discussed. The email, which is also attached to plaintiff's amended complaint, is dated January 19, 2018, and states, in pertinent part, as follows:

> "Section 7-5(b) of the Illinois Election Code required the declaration to be filed with the 'local election official' in the same office in which the nomination papers for the office were to be filed (for MWRD candidates, this means the Cook County clerk's office)

> * * *

> Section 17-16.1 of the Election Code mandates that write-in votes shall not be counted by any 'election authority or authorities' unless they have received a timely filed declaration of intent from the candidate. Thus, for MWRD offices, this requires write-ins to file with both of the proper election authorities, which

are the Cook County Clerk's office and the Chicago Board of Election Commissioners[.]" (Emphases omitted.)

The email also references this court's decision in *Lewis v. Orr*, 2013 IL App (1st) 130357, ¶ 9, where this court wrote "construing sections 7-5(d) and 17-16.1 together, we must conclude that a primary need only be held when a write-in candidate files the proper paperwork with both the relevant election authority and election official."

¶ 6    On January 22, 2018, plaintiff filed his original complaint for declaratory judgment and writ of *mandamus* and an emergency motion for expedited consideration of the complaint. On January 24, 2018, plaintiff filed an amended complaint. Plaintiff's amended complaint alleges he satisfied the requirements of section 7-5(b) of the Election Code by filing his declaration with the Clerk, who is the "local election official." Plaintiff further alleged he satisfied the requirements of section 17-16.1 of the Election Code by filing his declaration with the Clerk, who is the "election authority" "for a county-wide office." Plaintiff's complaint asserts "[t]he Cook County Clerk is the 'election official' and the 'election authority' for county-wide offices in the County of Cook." Plaintiff argued the general counsel relied on the language "election authority or authorities" in section 17-16.1 for his conclusion and responded "[t]here are, in fact, offices which would require a candidate to file his declaration with multiple election authorities." Plaintiff cited as an example an office which straddles multiple counties and stated "[a] write-in candidate for that office would need to file a declaration with the county clerk of each of those counties as they would be the election authority for counting votes for that office." Plaintiff argued the Election Code does not grant the Board "the authority to deny a candidate ballot access for a county wide office." Rather, the Clerk is "*the* election authority" for candidates for county-wide offices in Cook County.

¶ 7    On January 24, 2018, the trial court granted plaintiff's emergency motion for expedited consideration of his complaint, entered a briefing schedule for plaintiff to file a memorandum in support of his complaint and for defendants to respond, and set January 31, 2018 as the date for hearing.  On January 26, 2018, plaintiff served the court and defendants with his memorandum in support of plaintiff's amended complaint for declaratory judgment and writ of *mandamus*.  On January 29, 2018, defendant Board of Elections served plaintiff, the court, and the other defendants with their memorandum in opposition to the amended complaint.

¶ 8    The Board's memorandum begins by stating that pursuant to section 17-16.1 of the Election Code, "no election authority is authorized to count votes for any write-in candidate unless that candidate has timely filed a notarized declaration of intent to be a write-in candidate with that election authority."  The Board's memorandum argued the Clerk and the Board are election authorities "for two entirely different statutory 'election jurisdictions.' "  Specifically, under section 1-3(9) of the Election Code, the Board is the election authority within the corporate limits of the City of Chicago, and the Clerk is the election authority for the territory in Cook County that lies outside of Chicago ("suburban Cook County").  The Board argued the election district for MWRD Commissioner overlaps two different election jurisdictions governed by two different election authorities (the Board for the City of Chicago and the Clerk for suburban Cook County), and the Election Code requires a write-in candidate to file a declaration with both.  Therefore, the Board argued, it is not authorized to count any of plaintiff's write-in votes in the City of Chicago; thus, plaintiff has no legal right to the relief he seeks and the Board has no clear legal duty to comply with the requested writ.

¶ 9    Following a hearing, the trial court entered a written order denying plaintiff's requested relief.  This appeal followed.

¶ 10                                  ANALYSIS

¶ 11    Plaintiff's amended complaint sought a declaratory judgment and writ of *mandamus*. "The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute." 735 ILCS 5/2-701 (West 2016). "*Mandamus* is an extraordinary remedy to enforce, as a matter of right, the performance of official duties by a public officer where no exercise of discretion on his part is involved. [Citations.] To be entitled to a writ of *mandamus*, a party must establish a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ. [Citation.]" (Internal quotation marks omitted.) *Burris v. White*, 232 Ill. 2d 1, 7 (2009). In this case, the material facts are not in dispute and this appeal raises a pure question of statutory construction. Therefore, our standard of review is *de novo*. *People ex rel. Birkett v. Jorgensen*, 216 Ill. 2d 358, 363 (2005) ("This case involves a pure question of statutory construction. Accordingly, our review of the issues is *de novo*. [Citation.]"). "Our highest priority is to ascertain and give effect to the legislature's intent, of which the best indicator is the statutory language, given its plain and ordinary meaning. [Citation.] When the language is clear and unambiguous, we need not resort to further aids of statutory construction, although we do always presume that the legislature did not intend an absurd, inconvenient, or unjust result." *Id.* The relevant sections of the Election Code for purposes of the issue of statutory construction raised by this appeal are sections 7-5 and 7-16.1.

¶ 12    "Section 7-5 governs when primary elections must be held. Under section 7-5(b), no primary election for a political party's nominee is required if the nomination is uncontested. A primary is required, however, if a write-in candidate enters the election." *Lewis*, 2013 IL App (1st) 130357, ¶ 7. Section 7-5 sets out the procedure an intended write-in candidate must follow

to trigger a primary where a nomination is uncontested and provides, in pertinent part, as follows:

> "whenever a person who has not timely filed valid nomination papers and who intends to become a write-in candidate for a political party's nomination for any office for which the nomination is uncontested files a written statement or notice of that intent with the State Board of Elections or the local election official with whom nomination papers for such office are filed, a primary ballot shall be prepared and a primary shall be held for that office." 10 ILCS 5/7-5(d) (West 2016).

Plaintiff argues he complied with the requirements of section 7-5(d) by filing his declaration of intent to become a write-in candidate for the office of Commissioner of the MWRD with the "local election official[1]," which he states in this instance is the Clerk, because nomination papers for the office of Commissioner of the MWRD are filed with the Clerk. Section 7-12 of the Election Code states "[w]here the nomination is to be made for a county office *** then such petition shall be filed in the office of the county clerk ***." 10 ILCS 5/7-12(2) (West 2016).[2] The Board did not dispute the fact plaintiff complied with section 7-5 of the Election Code by filing his declaration of intent to become a write-in candidate with the Clerk and that plaintiff's filing would be sufficient to trigger a primary election in an uncontested election. Instead, the Board argued that plaintiff failed to comply with the requirements of section 17-16.1 of the Election Code, which provides the requirements that must be met for write-in votes to be

---

[1]     Section 1-3 defines "local election official" as "the clerk or secretary of a unit of local government." 10 ILCS 5/1-3(10) (West 2016).

[2]     See also "2018 Election Calendar" (April 25, 2017), Chicago Board of Election Commissioners (available at https://app.chicagoelections.com/documents/general/P2018-G2018-Election-Calendar-E.pdf.).

counted.  The Board argued what "is truly at issue between the parties is the proper statutory interpretation of Section 17-16.1 of the Election Code."

¶ 13     Section 17-16.1 of the Election Code reads, in pertinent part, as follows:

> "Write-in votes shall be counted only for persons who have filed notarized declarations of intent to be write-in candidates with the proper election authority or authorities not later than 61 days prior to the election."  10 ILCS 5/17-16.1 (West 2016).

Section 17-16.1 of the Election Code is contained in Article 17 of the statute, which governs the conduct of elections and making returns.  Also applicable is Article 18 of the Election Code, which governs the conduct of elections and making returns in municipalities under the jurisdiction of a Board of Election Commissioners.  Article 18 contains section 18-9.1, which similarly provides that "[w]rite-in votes shall be counted only for persons who have filed notarized declarations of intent to be write-in candidates with the proper election authority or authorities not later than 61 days prior to the election."  10 ILCS 5/18-9.1 (West 2016).  Section 1-3(8) defines "election authority" as "a county clerk or a Board of Election Commissioners."

¶ 14     Plaintiff first argues that the Board erroneously based its determination he had to file his declaration with it on this court's decision in *Lewi*s.  In *Lewis*, the court framed the question as "whether a write-in candidate for an uncontested primary election must file a declaration of candidacy with both the election official and the election authority, or whether it is sufficient to file a declaration with only the election official."  *Lewis*, 2013 IL App (1st) 130357, ¶ 1.  In that case, the candidate complied with section 7-5 of the Election Code when she filed a declaration of intent to be a write-in candidate with the clerk of the Village of Broadview, the local election official.  *Id. ¶* 7.  However, the intended write-in candidate did not comply with section 17-16.1 of the Election Code by failing to file a notarized declaration of intent with the election authority

(which in that case was the Clerk). *Id.* ¶¶ 6-8. These facts gave rise to a scenario which, under a plain reading of the statute, would require a primary election to be held because the candidate satisfied the requirements of section 7-5(d) by filing a declaration with the local election official, but any votes cast for the candidate could not be counted because the candidate did not satisfy the requirements of section 17-16.1 by failing to file a notarized declaration of intent to be a write-in candidate with the election authority or authorities. *Id.* ¶ 9. But the *Lewis* court noted that such a result would be absurd, and "the rules of statutory construction prohibit us from reading the Election Code in a way that would produce 'absurd, inconvenient, or unjust results.' [Citation.]" *Id.* This court held that "[i]nstead, construing sections 7-5(d) and 17-16.1 together, we must conclude that a primary need only be held when a write-in candidate files the proper paperwork with both the relevant election authority and election official." *Id.* This court denied the candidate's request for *mandamus* to order the Clerk to hold a primary election because the plaintiff could "not establish that [the] defendant has a clear duty to hold an election because, under our reading of the Election Code, he is only required to hold a primary when a write-in candidate files the appropriate paperwork with both the election authority and election official. Because [the] plaintiff only filed her nominating papers with the village clerk, she has not complied with the statute and [the] defendant is therefore not required to hold a primary." *Id.* ¶ 10.

¶ 15 In this case plaintiff argues *Lewis* in inapposite because in *Lewis*, the local election official (the village clerk for the office of village president) and the election authority (the clerk of Cook County) were distinct entities; whereas, here, there is "a 'unity' of election official and election authority." The record shows that in plaintiff's election there are two separate election authorities which run elections and count the votes in county-wide elections held in Cook County—the Chicago Board of Election Commissioners is the election authority which counts

the votes of those voters residing inside Chicago, and the Clerk of Cook County is the election authority for areas outside Chicago. This case presents the question of whether an intended write-in candidate satisfies the requirements of section 17-16.1 of the Election Code when he files a notarized declaration of intent with only one of two election authorities. We construe plaintiff's position not to refute the central holding of *Lewis*—that he was required to file a declaration with the local election official *and* the election authority—but rather to be that he satisfied the requirements of the statute when he filed with the Clerk alone, as local election official and election authority, rather than the two existing authorities. Plaintiff argues the attorney for the Board improperly relied on the "authority or authorities" language in section 17-16.1, which states that votes "shall be counted only for persons who have filed notarized declarations of intent to be write-in candidates with the proper election *authority or authorities*." (Emphasis added.) 10 ILCS 5/17-16.1 (West 2016). With regard to the possibility there may be multiple election "authorities" for an election, plaintiff concedes the Board's argument in the court below that for electoral units that overlap the city and the county, or the city and multiple counties, the election authorities could be both the Board and the clerks of the counties in question. Nonetheless, that fact, plaintiff argues, does not aid the Board because in those instances, "[t]here is no unity as we have here in the county-wide office of Commissioner of the MWRD." (Emphasis omitted.)

¶ 16    In support of his argument the local election official and the election authority are unified in the Clerk for this particular county office, plaintiff first argues "nowhere in the [Election] Code are the duties of a county clerk as the election authority for the county ever transferred to a city board of elections." That is incorrect. In every city adopting Article 6 of the Election Code "there shall be created a board of election commissioners, which shall be composed of 3 members, each of whom shall be designated as an election commissioner, and shall be appointed

by the circuit court in the county in which such city *** shall be located." 10 ILCS 5/6-21 (West 2016). The board of commissioners is required to "secure and open an office" and keep "ordinary business hours." 10 ILCS 5/6-24 (West 2016). The Election Code provides that "[u]pon the opening of such office the county clerk of the county in which such city *** is situated shall, upon demand, turn over to such board all registry books, registration record cards, poll books, tally sheets and ballot boxes heretofore used and all other books, forms, blanks and stationary of every description in his hands in any way relating to elections or the holding of elections within such city." *Id.* Section 6-26 of the Election Code reads as follows:

> "The board of election commissioners shall make all necessary rules and regulations, not inconsistent with this Article 6 and Articles 14 and 18 of this Act, with reference to the registration of voters and the conduct of elections. The board of election commissioners shall, except as otherwise provided in this Section, have charge of and make provisions for all elections, general, special, local, municipal, state and county, and all others of every description to be held in such city or any part thereof, at any time, or in such village or incorporated town, as the case may be. The board of election commissioners shall not have charge of elections for local school councils established pursuant to Article 34 of The School Code." 10 ILCS 5/6-26 (West 2016).

Moreover, section 7-62 of the Election Code states:

> "In cities having a board of election commissioners, the duties herein imposed upon the county, city, incorporated town or village clerk, as the case may be, shall be discharged by the board of election commissioners in the same manner, as near as may be, and to the same extent and with like effect that the similar duties imposed by this Article are discharged by the county, city,

- 11 -

incorporated town or village clerk, as the case may be; and the ballots for the nomination of all candidates to be voted for in such city shall be printed by the board of election commissioners and the returns of the primary held in such city shall be made to such board of election commissioners." 10 ILCS 5/7-62 (West 2016).

Thus, contrary to plaintiff's assertion, the duties of the clerk of the county as election authority, for a county which has a city that has a municipal board of election commissioners (including the City of Chicago), are expressly transferred to the municipal board of election commissioners for all elections in that city by statute.

¶ 17    Next, plaintiff argues "there is no provision of the statute that requires or allows candidates to file nomination papers with the Chicago Board of Election Commissioners for a countywide office." That point is inapposite. The Board's own election calendar states that nominating petitions for candidates for Commissioner of the MWRD are to be filed in the Clerk's office. The Board does not dispute plaintiff's compliance with section 7-5(d) of the Election Code, which requires a notice of intent to become a write-in candidate to be filed with the local election official "with whom nomination papers for such office are filed." 10 ILCS 5/7-5(d) (West 2016). Rather, the Board stated, and we agree, the issue in this case is whether plaintiff complied with section 17-16.1 of the Election Code when he filed his declaration with one authority rather than both authorities.

¶ 18    In further support of his argument the Clerk is the only election authority for the election of a Commissioner of the MWRD (and presumably, the Board is not an election authority for that office), plaintiff argues the Clerk "certifies the candidates to the ballot for the office of Commissioner of the MWRD." Plaintiff cited an example of an office whose jurisdiction "straddles the City of Chicago, Cook County and DuPage County" and admitted that for such

office "the election authorities would be the Chicago Board, and the Clerks of *** DuPage and Cook Counties." Plaintiff argued this case is different because there is unity of election authority and election official for "the county-wide office of Commissioner of the MWRD." The only basis plaintiff offered for claiming the former office is different from the office of Commissioner of the MWRD, such that "unity" allegedly exists, is plaintiff's claim "[a] county-wide candidate is certified by the county clerk as the election authority for that entire county, for purposes of countywide offices." The Board argued in the court below that "[n]o election authority certifies a *write-in* candidate to the ballot." (Emphasis added.) The provision in the Election Code on which plaintiff relies for that position, section 7-14, refers to nominating petitions, not write-in candidacies. Section 7-14 of the Election Code which reads, in pertinent part, as follows:

"Not less than 62 days before the date of the general primary, each county clerk shall certify the names of all candidates whose nomination papers have been filed with such clerk and declare that the names of such candidates for the respective offices shall be placed upon the official ballot for the general primary in the order in which such nomination papers were filed with the clerk, or as determined by lot, or as otherwise specified by statute. Each county clerk shall place a copy of the certification on file in his or her office and at the same time issue to the board of election commissioners a copy of the certification that has been filed in the county clerk's office, together with a copy of the certification that has been issued to the clerk by the State Board of Elections, with directions to the board of election commissioners to place upon the official ballot for the general primary in that election jurisdiction the names of all candidates that are listed on such certification in the same manner and in the same order as shown upon such certifications." 10 ILCS 5/7-14 (West 2016).

- 13 -

¶ 19　Plaintiff contends section 7-14 "establishes a relationship between County Clerks and boards of election commissioners in which the county clerks notify the boards of election commissioners of candidates who are certified. Not the other way around. The county clerks of Illinois have not been stripped of their 'election authority' in favor of any board of election commissioners." Section 6-26 of the Election Code establishes that the Board is the election authority for elections to be held in the City of Chicago. Plaintiff admitted that where an elected office "straddles the City of Chicago" and Cook County, the election authorities would be the Board and the Clerk, and we agree. Plaintiff makes several references to the "county-wide" office of Commissioner of the MWRD. However, plaintiff does not argue that the office for which he sought to become a write-in candidate does not encompass areas of both the City of Chicago and suburban Cook County. In this appeal plaintiff admitted the opposite, stating "the office in question *** encompasses both the city of Chicago and suburban Cook County." The fact the Clerk "certif[ies] the names of all candidates whose *nomination papers* have been filed with such clerk and declare[s] that the names of such candidates for the respective offices shall be placed upon the official ballot for the general primary" does not change the fact the Board is the election authority for elections in the City of Chicago. See 10 ILCS 5/6-26 (West 2016).

¶ 20　In fact, section 7-14 bolsters that conclusion because the "certification" required by section 7-14 is then transmitted to the Board for the *Board* to place those candidates on the ballot "for the general primary in that election jurisdiction." 10 ILCS 5/7-14 (West 2016). Additional support for concluding the Board is the election authority for elections in Chicago, and that plaintiff was required to file his declaration of intent with the Board, is found in sections 17-16.1 and 18-9.1, which both require an election authority that receives a notarized declaration of intent to be a write-in candidate to "deliver a list of all persons who have filed such declarations to the election judges in the appropriate precincts prior to the election." 10 ILCS 5/17-16.1; 18-

9.1 (West 2016). Nowhere does the Election Code state one election authority (*e.g.*, the Clerk), must notify another election authority (*e.g.*, the City of Chicago), that it received a declaration of intent; nor is the Clerk statutorily authorized to notify Chicago election judges about write-in candidates. Regardless, section 7-14 addresses candidates for office who file nominating petitions with the Clerk, and we are here dealing with an elector seeking to become a write-in candidate. Section 17-16.1 is concerned only with counting write-in votes, not nomination petitions. We find no reason why one office which encompasses regions governed by different election authorities should be treated any differently from any other office for purposes of section 17-16.1. Plaintiff's argument that the Clerk is the (only) election authority for an election of Commissioner of the MWRD to be held in the City of Chicago, and thus "one filing satisfies all legal requirements," fails.

¶ 21    Alternatively, plaintiff argues section 17-16.1 of the Election Code is written in the disjunctive and, therefore, the statute only required him to "file with at least one election authority." In other words, plaintiff's argument is that if a candidate files a notarized notice of intent to become a write-in candidate with either "the proper election authority" (*e.g.*, the Clerk) or with "authorities" (*e.g.*, the Clerk and the Board) he has complied with the requirements of the statute. The Board argues sections 17-16.1 and 18-9.1 "unambiguously require all write-in candidates to file declarations of intent with *every* 'proper election authority or authorities' within the district in which they are seeking elective office." (Emphasis added.)

¶ 22    "The word 'or' is disjunctive. [Citation.] Disjunctive connotes two different alternatives. [Citation.] Thus, '[a]s used in its ordinary sense, the word "or" marks an alternative indicating the various parts of the sentence which it connects are to be taken separately.' [Citation.]" *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 111 (2011). The flaw in plaintiff's argument is the implicit suggestion that in this instance plaintiff gets to pick which alternative suits him. There

is nothing to suggest that was the legislature's intent, and "[l]egislative intent remains the paramount consideration: 'Traditional rules of statutory construction are merely aids in determining legislative intent, and these rules must yield to such intent.' [Citation.] In this regard, we may properly consider the purpose of the statutes, the problems that they target, and the goals that they seek to achieve. [Citation.]" *Moore v. Green*, 219 Ill. 2d 470, 479-80 (2006). The legislature's intent in section 17-16.1 was for write-in candidates to file their notice of intent with the election authority, if there is only one election authority for the election in which a write-in candidacy is sought, or with each of the election authorities for the election at issue if there is more than one, so they are on notice to look for write-in votes. (Plaintiff's construction begs the question of whether a write-in candidate choosing to notify "authorities" then has to notify all of the "authorities" or may notify any number greater than one that he or she chooses.) The legislature could not have intended plaintiff's construction because plaintiff's construction creates an ambiguity. "[A] statute will not be construed as creating ambiguities where they do not exist." *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d 185, 187 (2000).

¶ 23 Section 17-16.1 requires filing with "the proper election authority or authorities." The language "the proper" in that clause implies that where the notice must be filed will be determinant. If a candidate can choose to file in less than all of the election authorities that govern the election at issue, which plaintiff admitted is a possibility, then, when an election is governed by multiple election authorities, there is nothing in the statute to guide the candidate as to which one is "the proper" authority with which to file. On the contrary, construing the statute so that the alternative presented by the statute is not to pick where to file but to file with the singular election authority for elections governed by only one, or with all of the relevant election authorities for elections governed by more than one, avoids that ambiguity. Thus, we construe

the statute such that the legislature specified the requirement for write-in candidates to file additional declarations of intent.

¶ 24    Further, plaintiff's construction of the statute renders the language "or authorities" superfluous.  When construing a statute, each word, clause, and sentence must be given a reasonable construction, if possible, and should not be rendered superfluous.  *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13.  If the legislature intended that one notarized declaration with any relevant election authority was sufficient to satisfy section 17-16.1, there was no need to offer the alternative to file with multiple election authorities (and the legislature could have avoided any confusion by requiring the filing with "a" proper election authority).  Plaintiff has posited no purpose for doing one over the other.  The purpose of filing declarations with all relevant election "authorities," conversely, is evident:  to notify the relevant election authorities of the elector's write-in candidacy so that those votes, as opposed to votes for any random name a voter might write on a ballot, will be counted.[3]  Plaintiff's argument that he satisfied the requirements of section 17-16.1 because the statute is written in the disjunctive fails.

¶ 25    We granted Geoffrey Cubbage leave to file a memorandum of law as *amicus curiae*.  Ill. S. Ct. R. 345 (eff. Sep. 20, 2010).  Cubbage also filed a declaration of intent to be a write-in candidate with the Clerk for the office at issue in this appeal but did not file a notarized declaration of intent with the Board.  Cubbage's *amicus* memorandum argues "there is no provision in the [Election] Code that informs prospective candidates that they must also file nomination papers with [the Board.]"  Cubbage argues this case therefore raises due process concerns because a candidate in his position did not have "notice" of the requirement to file a

---

[3]     The Board argued that sections 17-16.1 and 18-9.1 relieve it of the burden of "counting all the 'Mickey Mouse' and 'Superman' write-in votes that frequently show up in elections."  The Board also noted that because of the statutes they are not placed in the position of having to guess whether write-in votes should be counted.

declaration of intent with the Board "based solely on [the Board's] strained interpretation of the phrase 'authority or authorities' found in [section] 17-16.1."

¶ 26    "It is only when the legislative act is so indefinite and uncertain that the courts are unable, by accepted rules of construction, to determine with any reasonable degree of certainty what the legislature intended, or when it is so incomplete and inconsistent that it cannot be executed, that constitutes such indefiniteness and uncertainty that will invalidate the law." *People ex rel. Christensen v. Board of Education School District No. 99, Cook County*, 393 Ill. 345, 353-54 (1946). "Statutes vulnerable to the objection stated have been declared unconstitutional as denying due process. [Citation.]" *Natt v. Suburban Cook County Tuberculosis Sanitarium District*, 407 Ill. 436, 441 (1950). "When faced with a vagueness challenge to a statute, a court considers not only the language used, but also the legislative objective." *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 94 (2002). "[A] statute is not unconstitutionally vague merely because one can imagine hypothetical situations in which the meaning of some terms might be called into question." *Id.* at 95.

¶ 27    We disagree with Cubbage's position that the statute fails to inform candidates they must file with the Board under these circumstances. *Supra*, ¶¶ 17-22. We also reject Cubbage's argument that reading the statute as written to require potential write-in candidates to file a declaration of intent with the Board raises due process concerns. "[I]t is not difficult to determine 'with any reasonable degree of certainty what the legislature intended' [citation]" (*id.* at 94) with sections 17-16.1 ant 18-9.1. The requirement for a write-in candidate to file with every relevant election authority in order to have his or her votes counted by those election authorities is the only reasonable interpretation of the statute.

¶ 28    Next, plaintiff asks this court to take judicial notice of the fact that of the seven candidates who filed with the Clerk declarations of intent to be a write-in candidate for the office

plaintiff seeks only four also filed declarations with the Board and one filed only with the Board. Plaintiff argues "[t]o the extent that the various candidates filed declarations of intent with various offices, it can be said that the statute is ambiguous." Plaintiff argues this alleged ambiguity should be resolved in his favor because "statutes imposing disqualification should be construed liberally, resolving all doubts in favor of a candidates' eligibility" (*McGuire v. Nogaj*, 146 Ill. App. 3d 280, 282 (1986)) and because a "clear legislative statement" is necessary before a statute will be construed to restrict "the people's right to endorse *** the candidate of their choice" (*Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997)). "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13. "A statute is not ambiguous merely because the parties disagree as to its meaning." *Castro v. Police Board of City of Chicago*, 2016 IL App (1st) 142050, ¶ 32.

¶ 29    Assuming, *arguendo*, the facts as plaintiff presents would not establish an ambiguity in the statute. First, we do not know in what "sense" the other candidates understood the statute. We do not know if the other candidates (or plaintiff) understood the statute to mean they could take the "option" to file with "an" election "authority" as plaintiff (incorrectly) argues is possible under the statute, or if they thought the Clerk was the (only) election authority for the office they sought, or if they were simply negligent. Second, plaintiff's understanding of the statute is not reasonable. If the language in the statute "is susceptible to more than one equally *reasonable* interpretation, it is ambiguous." (Emphasis added.) *Board of Education of Springfield School District No. 186 v. Attorney General of Illinois*, 2017 IL 120343, ¶ 25. An understanding of a statute that is reasonable is one that "will not produce absurd, unjust, unreasonable or inconvenient results that the legislature could not have intended. [Citations.]" *Collins v. Board of Trustees of Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103, 110 (1993) ("A

statute capable of two interpretations should be given that which is reasonable and which will not produce absurd, unjust, unreasonable or inconvenient results that the legislature could not have intended."). See also *Demars-Evans v. Mikron Digital Imaging-Midwest, Inc.*, No. 13-CV-1179, 2013 WL 3224588, at *4 (N.D. Ill. June 25, 2013) (if the statute is ambiguous with respect to the specific issue, the court must then determine whether the proposed interpretation of the statute is reasonable. "The construction of the statute should not render any of the provisions superfluous or redundant."). For the reasons discussed above (*supra*, ¶¶ 17-22) plaintiff's construction of the statute would lead to absurd results the legislature could not have intended. Therefore, we find that the statute is not ambiguous.

¶ 30    Finally, plaintiff argues the Board's interpretation of the statute runs afoul of Article III, section 4 of the Illinois Constitution. Plaintiff notes that a candidate for the office of Commissioner of the MWRD "seeking to petition his way onto the ballot would file his nominating petitions with the [Clerk]. There is no requirement for a separate, concurrent filing with the [Board] for that candidate to obtain ballot access." Plaintiff argues that requiring a write-in candidate to file a notarized declaration of intent to be a write-in candidate with the election authority for the election in which a write-in candidacy is sought is an "extra step" that "would be illogical and run counter to Article III, Section 4." We disagree.

¶ 31    Article III, section 4 of the Illinois Constitution reads as follows: "The General Assembly by law shall define permanent residence for voting purposes, insure secrecy of voting and the integrity of the election process, and facilitate registration and voting by all qualified persons. Laws governing voter registration and conduct of elections shall be general and uniform." Ill. Const. art. III, § 4. We construe plaintiff's argument to be that it is not uniform to require candidates seeking ballot access by nomination petition to file only with the election official (who then transmits their name to the election authority for inclusion on the ballot) and to

require candidates seeking ballot access by write-in candidacy to file a notice of intent with the election official and the election authorities. These are clearly two different classes of candidates who may be treated differently. "Laws are general and uniform when alike in their operation upon all persons in like situation. [Citations.]" (Internal quotation marks omitted.) *Bridgewater v. Hotz*, 51 Ill. 2d 103, 109 (1972). Here, the persons affected are not "in like situation." Plaintiff's argument the interpretation offered by the Board, with which we agree, violates our constitution, fails.

¶ 32    Plaintiff sought a declaration finding that he correctly filed his declaration of write-in candidacy with the correct election authority and that he need not file with the Chicago Board of Election Commissioners. We hold that to satisfy the requirements of section 17-16.1 of the Election Code to allow the Board to count his write-in votes, plaintiff was required to file a notarized declaration of intent to be a write-in candidate with the Board because the Board is an election authority for the office plaintiff seeks. Accordingly, the trial court properly denied plaintiff's complaint for a declaratory judgment. Plaintiff also sought an order directing the Chicago Board of Election Commissioners to count all write-in votes for him in the March 20, 2018 primary election. We hold because plaintiff failed to file a notarized declaration of intent to be a write-in candidate with the Board, pursuant to section 17-16.1 of the Election Code the Board is not authorized to count any votes for plaintiff. Accordingly, the trial court properly denied plaintiff's complaint for a writ of *mandamus*.

¶ 33                              CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 35    Affirmed.